UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

DEBRA A. IANAZZI,

                    *Plaintiff*,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant*.

-------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**

20-CV-04366(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), Plaintiff Debra A. Ianazzi ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") finding Plaintiff not eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").

        Presently before the Court are the parties' cross motions for judgment on the pleadings. (*See* ECF Nos. 13, Plaintiff's Notice of Motion for Judgment on the Pleadings; 15, Defendant's Cross Motion for Judgment on the Pleadings.) For the reasons stated below, Plaintiff's motion is **GRANTED**, Defendant's cross motion is **DENIED**, and the case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

The parties have submitted a joint stipulation of relevant facts, which the Court has reviewed and incorporates by reference in its entirety. (*See generally* ECF No. 17, Joint Stipulation of Relevant Facts ("Joint Stip.").)

Plaintiff filed an application for DIB on November 14, 2016, alleging disability beginning on August 6, 2015. (*See* ECF No. 18, Administrative Transcript ("Tr.") at 21.) On May 5, 2017, the Social Security Administration ("SSA") denied Plaintiff's claim, concluding that the relevant medical evidence "did not show any conditions of a nature that would prevent [Plaintiff] from working." (*Id.* at 97-101.) On May 16, 2017, Plaintiff filed a request for a hearing before an administrative law judge, (*see id.* at 109-10), which was held before Administrative Law Judge Andrew S. Weiss (the "ALJ") on July 3, 2019 in Central Islip, New York. (*See id.* at 129—35.) A medical expert, Elizabeth Atkins, M.D., testified at the hearing. (*See id.* at 21.) A vocational expert, Yaakov Taitz, Ph.D., also testified. (*See id.*) In a decision dated July 16, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (*See id.* at 21-31.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, and the Appeals Council denied review on August 4, 2020, rendering the ALJ's decision the final decision of the Commissioner. (*See id.* at 1—3.)

2

Plaintiff initiated the instant action on September 17, 2020, (*see* ECF No. 1, Complaint ("Compl.")), and the Court issued a scheduling order on September 28, 2020. (*See* ECF No. 5, Scheduling Order.) The entire set of both parties' motion papers was filed on October 7, 2021. (*See* ECF Nos. 14, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings; 15, Defendant's Memorandum of Law in Support of Defendant's Cross Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion; 16, Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings.)

## LEGAL STANDARD

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act, and insured for disability benefits.[1] *See* 42 U.S.C. § 423(a), (d). A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other

---

[1] Plaintiff's last insured date is December 31, 2020. (*See* Tr. at 200.)

3

kind of substantial gainful work which exists in the national economy. *Id.* § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d

Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971) (internal quotation marks omitted)).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. *See* 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must consider whether the combined effect of all of the claimant's impairments, including those that are not severe (as defined by the regulations), would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. §§ 404.1523, 404.1545(a)(2). At steps one through four of the sequential five-step framework, the claimant bears the burden of proving her disability. *See Burgess*, 537 F3.d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, upon reviewing decisions of the Commissioner, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has

6

applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. If, however, the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I.   The ALJ's Disability Determination

The ALJ analyzed Plaintiff's application using the five-step sequential evaluation process, as mandated by the Act's implementing regulations. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 6, 2015, the alleged onset date of her disability. (Tr. at 23.) At step two, the ALJ found that Plaintiff suffered from degenerative disc disease at the lumbar spine, status post fusion, that severely limited her ability to perform basic work activities. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment under 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 23.) In so deciding, the ALJ gave "[s]pecific consideration . . . to the applicable sections of 1.00 *Musculoskeletal System* of the listed requirements." (*Id.* at 24.) In addition, the ALJ noted that no treating, examining, or non-examining medical source documented findings or rendered an opinion that Plaintiff's impairments, individually or in combination, met or medically equaled the requirements of any listed impairment. (*Id.*)

At step four, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: (1) lifting and/or carrying up to 10 pounds frequently and up to 20 pounds on occasion; (2) sitting for six hours in an eight-hour workday, alternating to a standing position for five minutes every hour; (3) standing and/or walking for six hours in an eight-hour workday, alternating to a sitting position for five minutes every hour; (4) never climbing scaffolds or ramps; (5) frequently climbing stairs; and (6) frequently stooping, kneeling, crouching, and crawling. (*Id.*)

The ALJ considered the objective medical evidence, medical opinion evidence, and Plaintiff's symptoms and concluded that, though Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and Plaintiff's own reports of her daily activities. (*Id.* at 28-29.) The ALJ also determined that the record does not contain medically supported opinions from treating or examining physicians that indicate that Plaintiff was disabled during the relevant time period. (*Id.* at 28.)

Having determined Plaintiff's RFC, the ALJ found, based on Plaintiff's age, education, work experience, and RFC, that Plaintiff was capable of performing her past relevant work as generally performed in the national economy. (*Id.* at 29.) The vocational expert classified Plaintiff's past relevant work as a dental receptionist, "a semi-skilled work generally performed with sedentary exertion," and testified that Plaintiff's postural limitations and need to alternate between sitting and standing would not preclude her from working as a dental receptionist. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled from August 6, 2015 to the date of the decision. (*Id.* at 30.)

## II.  The ALJ's Assessment of Opinion Evidence

### A.    The Treating Physician Rule Applies

The SSA adopted new regulations effective March 27, 2017, revising the standard for evaluating medical opinion evidence and effectively abolishing the treating physician rule. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff filed her claim on November 14, 2016, the prior regulations, including the treating physician rule, still apply. *See* 20 C.F.R. § 404.1527.  Under the treating physician rule, the opinion of a claimant's treating physician[2] as to "the nature and severity of the [claimant's] impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 128 (internal quotation marks omitted)).

An ALJ who does not accord controlling weight to a treating physician's medical opinion must consider the following non-exclusive *Burgess* factors in determining how much weight to give to the opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining

---

[2] A treating physician is an "acceptable medical source" with whom Plaintiff "has, or has had, an ongoing treatment relationship."  *See* 20 C.F.R. § 404.1527(a)(2).

10

medical evidence; and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95—96 (2d Cir. 2019) (citation omitted); *see* 20 C.F.R. § 404.1527(c)(2). "The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129). "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30 (internal quotation marks omitted)).

An ALJ's failure to explicitly apply the *Burgess* factors in determining how much weight to accord the opinions of treating physicians is a procedural error. *See Kennedy v. Comm'r of Soc. Sec.*, No. 19-cv-01740(KAM), 2021 WL 848784, at *5 (E.D.N.Y. Mar. 5, 2021) (citing *Estrella*, 925 F.3d at 96). Where the ALJ "procedurally err[s], the question becomes whether a searching review of the record . . . assures the court . . . that the substance of the . . . rule was not traversed-i.e., whether the record otherwise provides 'good reasons' for assigning '[some] weight' to [the treating physicians'] opinion[s]." *See id.* (quoting *Estrella,* 925 F.3d at 96). If, upon "a searching review of the record," the Court is assured that the substance of the treating physician rule was not traversed, it will affirm. *See Estrella*, 925 F.3d at 96.

11

**B.    The ALJ Did Not Traverse the Treating Physician Rule in Weighing Dr. Tarleton's Opinion.**

In the instant case, Plaintiff's treating orthopedic surgeon, Dr. Andrew Tarleton, opined, in a spinal medical source statement dated June 24, 2019, that Plaintiff's lumbar spine impairment prevented her from sitting longer than 10 minutes and standing or walking for over 10 minutes, and that Plaintiff, in addition to taking regular scheduled breaks, would need to rest lying down or reclining in a supine position for more than four hours in an eight-hour workday to relieve pain or fatigue.  (Tr. at 557.)  In addition, Dr. Tarleton indicated that Plaintiff could not lift and carry any weight in a competitive work situation, could rarely or never grasp, turn, and twist objects with her hands, rarely or never use her fingers for fine manipulation, and rarely or never use her arms for lateral and overhead reaching. (*Id.*)  Dr. Tarleton also opined that Plaintiff's symptoms were of such severity that she would be "off task," or not be able to sustain attention and concentration for even simple work tasks, for 25 percent or more of a typical workday, and that Plaintiff would need to take unscheduled breaks at least once every half hour for 30 minutes to an hour.  (*Id.* at 558.)  Finally, Dr. Tarleton indicated that Plaintiff's condition would produce "good days" and "bad days," and that she would likely be absent from

work more than four times a month due to her impairments or treatment. (*Id.*)

The ALJ assigned "limited weight" to Dr. Tarleton's opinion, having found "the highly restrictive capacity" suggested by Dr. Tarleton not persuasive because it "conflict[ed] with [Plaintiff's] reported activities of daily living," Dr. Tarleton's own treatment notes regarding the improvement of Plaintiff's symptoms, the clinical reports of Dr. Syeda Asad, the consultative examiner, recent diagnostic evidence, and the hearing testimony of Dr. Elizabeth Atkins, the medical expert. (*Id.* at 27—29.)  In according less than controlling weight to Dr. Tarleton's opinion, the ALJ failed to explicitly weigh all the *Burgess* factors, specifically the frequency, length, nature, and extent of Dr. Tarleton's treatment of Plaintiff.  Nowhere is it stated in the ALJ's decision, for example, that Dr. Tarleton began treating Plaintiff in January 2019, seeing her monthly or as needed, and that as of the date of the decision, July 16, 2019, Dr. Tarleton had last treated Plaintiff on June 19, 2019.

The Court finds that the ALJ set forth good reasons for according less than controlling weight to Dr. Tarleton's opinion and thus did not traverse the substance of the treating physician rule, despite failing to explicitly consider all the *Burgess* factors.  Dr. Tarleton's February 4, 2019 treatment notes state that the January 2019 MRI of Plaintiff's lumbar spine indicated

13

small disc bulges and facet arthropathy at L3/4 and L4/5, minimal retrolisthesis of L4, and mild bilateral neural foraminal narrowing at L4/5. (*Id.* at 546.) In addition, Dr. Tarleton's physical examination of Plaintiff in January, February, and June of 2019 showed that Plaintiff had a reduced range of motion of the thoracic and lumbar spine in all planes, and a mildly antalgic gait, and Dr. Tarleton noted Plaintiff's complaints of reoccurring lower back pain. (*Id.* at 546-48, 551—53, 559—61.) However, the result of Plaintiff's motor exam was 5/5, with light touch intact throughout both lower extremities, each time Plaintiff was seen by Dr. Tarleton, (*id.* at 547-48, 552—53, 560—61), and Dr. Asad, the consultative examiner, indicated in his internal medicine examination report that Plaintiff "appeared to be in no acute distress," had a normal stance and gait, used no assistive device, had no trouble getting on and off the exam table, and was able to rise from a chair without difficulty. (*Id.* at 519.) Furthermore, the medical expert, Dr. Elizabeth Atkins, who reviewed Plaintiff's January 2019 MRI, as well as the MRIs from February, April, and August of 2016, opined that Plaintiff's MRIs "have remained stable," and noted that Plaintiff did not have any nerve root compression. (*Id.* at 57—58.) Based on the foregoing, the ALJ determined that though Plaintiff's lumbar spine impairment imposed significant functional limitations, it did not hinder Plaintiff's physical function to the extent suggested by Dr. Tarleton.

14

Therefore, the Court concludes that substantial evidence in the record supports the ALJ's determination that Dr. Tarleton's opinion was not entitled to controlling weight.

Furthermore, Dr. Tarleton opined in his June 24, 2019 spinal medical source statement that Plaintiff could not lift and carry any weight in a competitive work situation, could rarely or never grasp, turn, and twist objects with her hands, rarely or never use her fingers for fine manipulation, and rarely or never use her arms for lateral and overhead reaching. (*Id.* at 557.) Despite this, Dr. Tarleton's January, February, and June 2019 treatment all indicate to the contrary that Plaintiff's left and right deltoids, biceps, triceps, wrist flexors, finger abductors, and grasp strengths were 5/5, (*id.* at 547-48, 552–53, 560–61), Plaintiff testified that her daily activities include "some cooking" and "light housework," (*id.* at 55), and the consultative examiner, Dr. Asad, opined that Plaintiff's hand and finger dexterity was intact and that her grip strength was 5/5 bilaterally. (*Id.* at 520.) The Court is assured, therefore, upon "a searching review of the record," that the substance of the treating physician rule was not traversed, and that the ALJ's decision to accord less than controlling weight to Dr. Tarleton's opinion regarding the limiting effects of Plaintiff's lumbar spine impairments is based on substantial evidence, namely, the inconsistencies between Dr. Tarleton's opinion and his own

15

treatment notes, opinion evidence and findings of the consultative examiner and the medical expert, and Plaintiff's reporting of daily activities.

### III. The ALJ's RFC Determination is Not Supported by Substantial Evidence.

"Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician." *Lao v. Comm'r of Soc. Sec.*, No. 18-cv-7462(FB), 2020 WL 4194210, at *3 (E.D.N.Y. July 21, 2020) (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010)). "An ALJ commits legal error when he makes a [RFC] determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities." *Van Dyne v. Saul*, No. 20-cv-260(MKB), 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). Further, though the ALJ may "choose between properly submitted medical opinions," he may not "set his own expertise against that of physicians who submitted opinions to him." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citation omitted).

In the instant case, the ALJ determined that Plaintiff had the RFC to perform "less than the full range of light work" as defined in 20 C.F.R. § 416.967(b)[3]. Specifically, the ALJ found that Plaintiff can: (1) lift and/or carry up to 10 pounds frequently and up to 20 pounds on occasion; (2) sit for six hours in an eight-hour workday, alternating to a standing position for five minutes every hour; (3) stand and/or walk for six hours in an eight-hour workday, alternating to a sitting position for five minutes every hour; (4) never climb scaffolds or ramps; (5) frequently climb stairs; and (6) frequently stoop, kneel, crouch, and crawl. (Tr. at 24.)

As previously discussed, the ALJ gave "limited weight" to Dr. Tarleton's opinion. (*Id.* at 27.)  Though the ALJ may assign less than controlling weight to a treating physician's opinion, as long as he sets forth good reasons for doing so, here, the ALJ, in addition to assigning "limited weight" to Dr. Tarleton's opinion, did not adopt any source opinion.  The ALJ's RFC determination is not supported by the opinion of Dr. Asad, the consultative examiner, who found "moderate limitations for squatting, kneeling, bending, walking, and standing for a long period of time," but did not specify the scope of Plaintiff's work-related physical

---

[3] 20 C.F.R. § 416.967(b) defines light work as work that "involv[es] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "requir[ing] a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

capabilities. (*Id.* at 520.)  Specifically, though Dr. Asad opined
that Plaintiff has "moderate limitations" for squatting, kneeling
bending, walking, and standing for "a long period of time," he did
opine as to for how many hours in an eight-hour workday Plaintiff
remained capable of performing those same activities.  Further,
Dr. Asad did not indicate how much weight Plaintiff could lift
and/or carry, or whether Plaintiff could climb scaffolds, ramps,
or stairs, and stoop, crouch, or crawl.

Similarly, the ALJ's RFC determination is not supported
by the opinion of the medical expert, Dr. Elizabeth Atkins.  Dr.
Atkins testified that Plaintiff was being treated "fairly
conservatively with physical therapy and a TENS Unit" and that
Plaintiff's latest MRI, performed in January 2019, showed no nerve
root impingement.  (*Id.* at 57–58.)  Dr. Atkins opined, based on
her review of the portion of the record that was provided to her,
which did not include the spinal medical source statement of Dr.
Tarleton, that Plaintiff did not satisfy the criteria of Listing
1.04(a). (*Id.* at 58.)  Because Dr. Atkins, like Dr. Asad, did not
specify the scope of Plaintiff's work-related physical
capabilities, her opinion does not support the vocational
limitations the ALJ found as part of his RFC determination.

Thus, it appears that the ALJ improperly "interpreted
the raw medical evidence to arrive at the conclusion that Plaintiff
was physically capable of" performing less than the full range of

18

light work, without the support of any medical opinion. *Santangelo v. Saul*, No. 18-cv-6199(CJS), 2019 WL 4409339, at *10 (W.D.N.Y. Sept. 16, 2019) (finding that "[t]he only discussion of Plaintiff's ability to lift, stand, and walk is from her hearing testimony" and "[t]he ALJ's discussion of the medical records does not touch on these physical requirements for light work"); *see Van Dyne v. Saul*, No. 20-cv-260(MKB), 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) ("Instead of developing the record, the ALJ concluded based on the examination findings of normal extremity strength and gait that there was no basis to conclude that Plaintiff cannot lift and carry up to twenty pounds occasionally and up to ten pounds frequently.  The ALJ, however, is not permitted to substitute his own lay opinion of the medical evidence for the medical opinion of an acceptable medical source." (citations omitted)); *Balaguer Perez v. Berryhill*, No. 17-cv-3045(JMA), 2019 WL 1324949, at *6 (E.D.N.Y. Mar. 25, 2019) ("Without a supporting medical opinion of Plaintiff's functional limitations, the ALJ's RFC determination that Plaintiff was capable of sedentary work constituted an impermissible interpretation of bare medical findings and is not supported by substantial evidence." (internal quotation marks and citations omitted)); *Guarino v. Colvin*, No. 14-cv-00598(MAT), 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016) ("Here, the ALJ had no medical source opinions on which to rely in formulating his RFC finding. As such, his RFC determination

19

constituted an impermissible interpretation of bare medical findings." (collecting cases)).  On remand, the ALJ must identify a medical opinion that supports the RFC determination described in his decision or any new RFC determination.

## IV.  The ALJ's Insufficient Credibility Determination and Explanations

Furthermore, the Court finds that on remand, the ALJ should further explain her credibility determinations.  The factors to be considered in assessing a claimant's credibility are: "(1) the claimant's daily activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." *Calo v. Comm'r of Soc. Sec.*, No. 20-cv-3559(AMD), 2021 WL 3617478, at *4 (E.D.N.Y. Aug. 16, 2021) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).  Thus, though the Commissioner can consider a claimant's daily activities in assessing the intensity and persistence of a claimant's symptoms, "a claimant need not be an invalid to be found disabled under the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal

20

quotation marks and citation omitted).  Moreover, ALJs must not overinterpret a claimant's ability to perform limited activities of daily living "as evidence of the ability to maintain full-time, competitive, remunerative work." *See Joseph Eugene F. v. Comm'r of Soc. Sec.*, No. 20-cv-04356(GRJ), 2022 WL 355918, at *6 (Feb. 7, 2022).

Here, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence in the record.  The ALJ's determination was based, in part, on "the relatively broad range of daily activities [Plaintiff] remain[ed] capable of performing," such as "personal care, tak[ing] walks for exercise, prepar[ing] simple meals and cook[ing], . . . light housework, light laundry, . . . driv[ing] and travel[ing] independently, shop[ping] as needed, and socializ[ing] regularly." (Tr. at 28–29.)  The ALJ, however, did not properly take into account Plaintiff's limitations in performing these daily activities.  For example, Plaintiff testified at the hearing that she would walk around her block once (and maybe twice, if she felt up to it), which would take about ten minutes, (*id.* at 43), and indicated in her Function Report, dated April 5, 2017, that she "[could not] lift anything more than 5 lbs without causing back pain." (*Id.* at 207.)  Furthermore, the ALJ failed to explain how Plaintiff's ability to engage in certain limited daily activities

21

demonstrated her ability to maintain a full-time job involving less than the full range of light work.

The Court also finds that the ALJ, in characterizing Plaintiff's treatment as "conservative," did not consider whether the conservative nature of her treatment can be attributed to other reasons, rather than an indication of the severity of her conditions. (*Id.* at 29.)  Social Security Ruling 16-3P states, "We will not find an individual's symptoms inconsistent with the evidence in the record[, based on the frequency or extent of the treatment sought not being comparable to the degree of her subjective complaints,] without considering possible reasons [she] . . . may not . . . seek treatment consistent with the degree of [her] . . . complaints."  SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017).  Here, the ALJ did not inquire into or consider Plaintiff's possible reasons for not pursuing a more aggressive treatment regime and instead merely noted the "conservative" treatment. (Tr. at 29.)  On remand, the ALJ should consider the reasons Plaintiff may not have sought treatment consistent with the degree of her complaints prior to determining that the alleged intensity and persistence of her symptoms are inconsistent with the overall evidence of the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED**, Defendant's cross motion for judgment on the pleadings is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

DATED:      September 22, 2022
            Brooklyn, New York

_____/s/_____

**HON. KIYO A. MATSUMOTO**
United States District Judge